UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
FREDERICK MARR,                :
                               :
        Plaintiff,             :   Civ. No.  12-4445 (NLH)
                               :              13-7444 (NLH)
    v.                         :
                               :   OPINION
WARDEN LOMBARDO, et al.,       :
                               :
        Defendants.            :
_____:
```

APPEARANCES:
Frederick Marr, #912718/798096
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
     Plaintiff, pro se


HILLMAN, District Judge

        Plaintiff Frederick Marr, formerly a pre-trial detainee

confined at Camden County Correctional Facility in Camden, New

Jersey,[1] brings this civil rights action under 28 U.S.C. § 1983

alleging inadequate medical care.  He seeks relief in the form

of monetary damages and medical treatment.  At this time, the

Court must review the Complaint, pursuant to 28 U.S.C. §

1915(e)(2), to determine whether it should be dismissed as

frivolous or malicious, for failure to state a claim upon which

_____

[1] Plaintiff is now confined at the New Jersey State Prison in
Trenton, New Jersey.  According to the New Jersey Department of
Corrections Inmate Locator, Plaintiff was sentenced on November
14, 2014, after the date of this Complaint.

relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff previously sought relief under § 1983 when he filed suit as a pretrial detainee against the Cape May County Correctional Center and other defendants in 2012. See Marr v. Cape May County Correctional Center, et al., No. 12-4445 (NLH). That Complaint, however, was dismissed as a result of this Court's sua sponte screening under 28 U.S.C. § 1915A. Specifically, this Court determined that Plaintiff's claims against the Cape May County Correctional Center must be dismissed with prejudice because "a county jail is not a 'person' subject to suit under 42 U.S.C. § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978)." Marr v. Cape May County Correctional Center, et al., 12-4445 (NLH), Opinion 5, October 23, 2013, (ECF No. 6) (citations omitted).

As to the remaining defendants, who were doctors and nurses at the correctional facility, the Court found that the "factual allegations [in the complaint did] not show that each (or any) individual defendant intentionally refused to provide needed medical treatment, intentionally delayed treatment for a non-

medical reason, or knowingly prevented him from receiving needed or prescribed medical treatment." Id. at 6.  Accordingly, the Court dismissed the complaint for failure to state a claim, but granted leave to amend within 45 days. Id. at 10.  The Order dismissing the Complaint was entered on October 25, 2013; thus, Plaintiff's deadline for submission of an amended complaint was December 9, 2013.

The Court then received a complaint from Plaintiff which was dated November 29, 2013. (Compl. 13, ECF No. 1).  Plaintiff paid the full filing fee associated with this Complaint and it was given a new docket number, 13-7444 (NLH).  However, it appears that this Complaint should not have been docketed as a new case, but rather as an Amended Complaint in Plaintiff's previous case, Civil Case No. 12-4445 (NLH).  Unfortunately, Plaintiff did not label his submission as an amended complaint, nor did he reference his existing case by docket number. Further confusing matters, Plaintiff paid another full filing fee, which gave the impression that he intended this to be a new civil suit.

The Court has reviewed the two complaints and supplemental letters filed on each docket.  For the reasons set forth below, the Court finds that the Complaint dated November 29, 2013 and given Civil Case No. 13-7444 (ECF No. 1) should have been filed as an amended complaint in Civil Case No. 12-4445.

First, the Complaint in this case (ECF No. 1) was dated November 29, 2013.  Thus, pursuant to the prison mailbox rule, see Pabon v. Mahanoy, 654 F.3d 385, 391 n. 8 (3d Cir. 2011), it was filed within the 45 day time period for amendment provided to Plaintiff by the Court in Civil Case No. 12-4445. See Marr v. Cape May County Correctional Center, et al., 12-4445 (NLH), Opinion 8, October 23, 2013, (ECF No. 6).  Also, the Complaint in this case (ECF No. 1) names the same defendants as the complaint in Civil Case No. 12-4445, plus three additional defendants.  Furthermore, it appears that Plaintiff attempted to follow the instructions given in the Court's October 23, 2013 Order by asserting facts for each named defendant in the subsequent Complaint, and by using the court-provided forms. Finally, the Complaint in this case (ECF No. 1) specifically references the previous federal suit.  With respect to previous relief sought, Plaintiff states that he "filed in fed[eral] court[,]" that the "jail was dismissed with pred[judice,]" and that he had "45 days to file on everyone else and $400[.]" (Compl. 11, ECF No. 1).

Taking this information as a whole, it appears to this Court that Plaintiff was under the mistaken belief that the dismissal of his previous complaint required the filing of a new complaint within 45 days and the payment of another filing fee.

The Court did not recognize this mistake until it commenced screening pursuant to 28 U.S.C. 1915A.

To remedy this mistake, the Court will consolidate the two cases and Plaintiff will be refunded the filing fee paid in connection with Civil Case No. 13-7444.

Plaintiff then submitted an Amended Complaint dated December 16, 2013 (ECF No. 2), followed by a Second Amended Complaint (ECF No. 3) in which he adds a final party, C.O. Schank. Plaintiff may not have known that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases); see also 6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). Accordingly, the Second Amended Complaint ("SAC") is the controlling document and will be screened by the Court pursuant to 28 U.S.C. § 1915A.

In his SAC, Plaintiff alleges that he was denied medical treatment and medication. The majority of his complaints relate to a particular incident, wherein Plaintiff contends that he was deprived of the use of his wheelchair, which resulted in a fall. Although he does not specify the extent of the injury sustained in this fall, if any, he alleges that he was denied medical

treatment after the fall.  Plaintiff asserts causes of action against: (1) Warden Lombardo; (2) Dr. Santillio; (3) Dr. Wynn; (4) Head Nurse Kristy Ciekiersky; (5) Head Nurse Douglas Wyth; (6) Nurse Toni Tees; (7) Nurse Joy Mitchel; (8) Nurse Lori Rosf; (9) Nurse Eilean Medevitt; and (10) C.O. Schank.

## II.   STANDARD OF REVIEW

### A.  Standard for Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 28 U.S.C. § 1997e.  The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive sua sponte

screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. <u>Fowler v. UPMS Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Belmont v. MB Inv. Partners, Inc.</u>, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to accept its factual allegations as true, <u>see</u> <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  However, while <u>pro se</u> pleadings are liberally construed, "<u>pro se</u> litigants still must allege sufficient facts in their complaints to support a claim."

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." <u>Schreane v. Seana</u>, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing <u>Allah v. Seiverling</u>, 229 F.3d 220, 223 (3d Cir. 2000)); <u>Mitchell v. Beard</u>, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); <u>Courteau v. United States</u>, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

<u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013)

(citation omitted).

> B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. §

1983 for certain violations of his Constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress, except that in any action brought against a
> judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall
> not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff

must allege, first, the violation of a right secured by the

Constitution or laws of the United States, and second, that the

alleged deprivation was committed or caused by a person acting

under color of state law. <u>See</u> <u>Harvey v. Plains Twp. Police</u>

<u>Dep't</u>, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); <u>see</u>

<u>also</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

> C. <u>Actions for Inadequate Medical Care</u>

Criminal pretrial detainees retain liberty interests firmly

grounded in the Due Process Clause of the Fourteenth Amendment.

See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee has been deprived of liberty without due process, is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

The Third Circuit has analyzed pretrial detainees' medical care claims utilizing the Eighth Amendment deliberate indifference standard. See Hubbard, 399 F.3d at 166 n.22; Sylvester v. City of Newark, 120 F. App'x 419 (3d Cir. 2005); Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).  To state a claim, inmates must satisfy an objective element and a subjective element. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Specifically, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale, 318 F.3d at 582.

To establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. See Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582.  Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally

refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 837–38. Moreover, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).

### III. DISCUSSION

As an initial matter, the Court finds that Plaintiff has alleged a serious medical need. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Atkinson v. Taylor, 316 F.3d 257, 272–73 (3d Cir. 2003); Monmouth County Correctional Institutional Inmates v.

Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Here, Plaintiff has alleged that he sustained an injury which requires the use of a wheelchair.  Accepting these factual allegations as true, the Court construes Plaintiff's need for a wheelchair as serious medical need. See James, 700 F.3d at 679. Thus, the potential merit of each of Plaintiff's claims turns on whether Plaintiff has sufficiently alleged in his Complaint that each defendant has acted with deliberate indifference to his serious medical need.

Many of the allegations in the Complaint relate to a particular incident in which Plaintiff claims that he fell outside cell block 4.  Specifically, Plaintiff asserts that Defendant Nurse Toni Tees was "messing around[,]" did "not put[] [the] wheelchair where it was supposed to be[,]" and did "not lock[] [the] breaks [sic]." (SAC 4, ECF No. 3).  Plaintiff further asserts that Nurse Toni Tees failed to report the incident and that he was denied medical treatment for unspecified injuries sustained in the fall.  Plaintiff also contends that certain medical staff at the correctional facility have stopped issuing him medication.

For the reasons set forth below, the factual allegations in the Complaint are insufficient to support claims against all but one of the named defendants.  However, because it is conceivable

that Plaintiff may be able to assert facts showing that the
other named defendants were deliberately indifferent to his
serious medical needs, this Court will grant Plaintiff 45 days
to file an amended complaint.

A. <u>Claim against Warden Lombardo</u>

Plaintiff first asserts a cause of action against Warden
Lombardo because "he is in charge of all Defendents [sic]." (SAC
4, ECF No. 3).  However, local government units and supervisors
are not liable under § 1983 solely on a theory of respondeat
superior.  See <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824
n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); <u>Monell</u>, 436 U.S.
658; <u>Natale</u>, 318 F.3d at 583–84.  "A defendant in a civil rights
action must have personal involvement in the alleged wrongs,
liability cannot be predicated solely on the operation of
respondeat superior.  Personal involvement can be shown through
allegations of personal direction or of actual knowledge and
acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d
Cir. 1988) (citations omitted); accord <u>Robinson v. City of
Pittsburgh</u>, 120 F.3d 1286, 1293–96 (3d Cir. 1997); <u>Baker v.
Monroe Twp.</u>, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Because Plaintiff in this case has not alleged any personal
involvement, direction, or knowledge on behalf of Warden
Lombardo, the claims against him will be dismissed.

B. <u>Claims against Dr. Santillio and Dr. Wynn</u>

Plaintiff asserts that both Drs. Santillio and Wynn
"refused to treat [him and] said it was prior injury[.]" (SAC 6-
7, ECF No. 3).  This plain statement, without more, is
insufficient to set forth a cognizable claim for inadequate
medical care.

In reaching this conclusion, the Court notes that it is
unclear from Plaintiff's SAC whether Plaintiff was ever examined
by these doctors.  In the Statement of Claims section of his
Complaint, Plaintiff explicitly states "I have never been
examined[.]" (SAC 11, ECF No. 3).  However, Plaintiff's
allegation that both doctors told Plaintiff it was a "prior
injury" suggests that both doctors communicated with, and
possibly examined, Plaintiff after the fall. Id. at 6, 7, 11.
Further supporting the inference that Plaintiff was seen by a
doctor is the fact that, in the section of his Complaint devoted
to Nurse Ciekierski, Plaintiff states, "I did not see Dr. for 6
days after fall." (SAC 7, ECF No. 3).  Thus, it appears that
Plaintiff did see an unnamed doctor regarding his fall.

Therefore, because Plaintiff has not provided any details
regarding his attempts to receive treatment from the doctors,
and because it appears from the Complaint that Plaintiff may
have actually been examined by a doctor 6 days after the fall,
the Court finds that Plaintiff has not supplied sufficient
information to establish that either of these named doctors

acted with deliberate indifference.  See Rouse, 182 F.3d at 197.

Accordingly, the claims against them will be dismissed.

As to Plaintiff's claim that Dr. Wynn will not permit

Plaintiff to have "sweetmate or coffee" but allows Plaintiff to

"get sugar every morning[,]" this allegation does not set forth

a cognizable claim for a violation of Plaintiff's constitutional

rights.  It will be dismissed.

C. Claims Against Head Nurse Kristy Ciekierski

Plaintiff asserts that Head Nurse Kristy Ciekierski denied

him treatment after the fall.  He states that he did not see a

doctor for 6 days after his fall; and he contends that when

Nurse Ciekierski did send him to the hospital, it was for a

blood sugar check. (SAC 7, ECF No. 3).  Later in his Complaint,

Plaintiff asserts that Nurse Ciekierski "wouldn't send [him] for

x-rays or M.R.I." Id. at 11.  These allegations are insufficient

to establish that Nurse Ciekierski acted with deliberate

indifference.

Plaintiff has not alleged how, or if, Nurse Ciekierski was

involved in, or knew of, Plaintiff's fall and it is unclear from

the Complaint that she intentionally refused to provide medical

treatment.  Additionally, although he states that he did not see

a doctor for 6 days after the fall, Plaintiff has not provided

enough information to establish that Nurse Ciekierski

intentionally delayed necessary medical treatment based on a

non-medical reason, or that she deliberately prevented Plaintiff
from receiving needed medical treatment. See Rouse, 182 F.3d at
197.  For these reasons, the claims against Nurse Ciekierski
will be dismissed.

     D. Claims Against Head Nurse Douglas Wyth

     Plaintiff first alleges that Nurse Wyth "refused [him]
treatment and pain pills[.]" (SAC 8, ECF No. 3).  This
statement, without more, is insufficient to set forth a cause of
action against Nurse Wyth.  It is unclear when, and in what
context, the treatment and pills were refused.  Presumably, the
"pain pills" referenced by Plaintiff are meant to alleviate pain
from an injury sustained when Plaintiff fell; however, Plaintiff
has not specified their purpose or indicated whether these pills
were prescribed.  Plaintiff has also failed to explain what type
of treatment he was denied or how this treatment was related to
a serious medical need.  Moreover, Plaintiff has not provided
enough information to suggest that Nurse Wyth acted with
deliberate indifference by refusing him treatment or pain pills.
Accordingly, the claims against him will be dismissed.

     Likewise, Plaintiff's bare assertion that Nurse Wyth would
not send him to the foot doctor is insufficient to establish a

serious medical need relating to his foot, or Nurse Wyth's deliberate indifference to that need.[3]

Plaintiff also alleges that Nurse Wyth "pulled wires from [his] hearing aid so it could not be repaired[.]" (SAC 8, ECF No. 3). The Court does not construe this as an allegation of inadequate medical care or any other type of Eighth Amendment violation. Rather, this appears to be a claim — albeit undeveloped — for destruction of property which properly sounds in state tort law and is therefore not cognizable as a substantive constitutional claim.

Moreover, an unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due

---

[3] The Court gleans from Plaintiff's supplemental letters and from the attachments to his SAC that he is a diabetic, that he previously received — but now refuses — medication for his diabetes, and that he received a prescription in 2010 for diabetic shoes and socks which has allegedly never been filled. (SAC 19, 24, 30, ECF No. 3). In the relief section of his SAC, Plaintiff states, "viens [sic] from purple feet to groin[.]" (SAC 12, ECF No. 3). In a letter from Plaintiff received September 9, 2014 (ECF No. 12), Plaintiff states, "I am now flat footed from not haveing [sic] proper shoes to wear my legs purple ½ way to nees [sic], and "just got turned down for visit to foot dr[.]" While this allegation is troubling, nowhere in his filings does Plaintiff indicate that this is an emergent situation or that the discoloration is directly related to any denial of medical treatment. To the extent Plaintiff means to assert a cause of action for inadequate medical treatment related to his foot condition, Plaintiff may do so in an amended complaint which sets forth factual allegations to explain and support such a claim including whether such a claim is emergent.

Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984).  The Third Circuit Court of Appeals has summarily dismissed prison due process claims where plaintiffs have had state tort suits for conversion of property and prison grievance procedures available to them. See Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010) (citing Tillman v. Lebanon County Corr., 221 F.3d 410, 422 (3d Cir. 2000).

Here, if the alleged action by Nurse Wyth was unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, et seq. (2001); see also Peterson v. Holmes, No. 12-865, 2012 WL 5451435 at *5 (D.N.J. Nov. 7, 2012). Plaintiff's subsequent reference to a grievance form in his SAC indicates that he was aware he had an administrative grievance procedure available to him.[4] (SAC 11, ECF No. 3).  Thus, to the

---

[4] Plaintiff references a grievance form on page 11 of the Second Amended Complaint. (ECF No. 3).  The Court is mindful that this reference is in the context of an allegation that prison staff would not give him a grievance form.  However, this alleged denial was specifically with respect to Plaintiff's complaint that prison staff failed to return his previous civil law suit file to him.  Plaintiff makes no allegation that he was denied a grievance form with respect to the incident involving Nurse Wyth and the hearing aid.  Accordingly, he could have, and should have, availed himself of the prison's administrative grievance procedures.

extent the allegation in the Complaint regarding the hearing aid
in was meant to assert a type of property claim, it must be
dismissed for failure to state a claim upon which relief may be
granted, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

    E. Claims Against Nurse Toni Tees

    With respect to Nurse Tees, Plaintiff states that she
"[t]old C.O. Schank if drive to Fla. I walk to nurses station
that caused my fall wheelchair 25' out of place wheels not
locked fall is on tape[.]" (SAC 8, ECF No. 3).  The Court
construes these statements as an allegation that Nurse Tees
commented to C.O. Schank that if Plaintiff was capable of
driving to Florida, then he was capable of walking to the
nurses' station.  Thus, Plaintiff alleges that Nurse Tees forced
him to walk 25 feet to his wheelchair where it sat with unlocked
wheels.  Plaintiff contends that this resulted in the alleged
fall outside cell block 4, which Plaintiff states is captured on
tape.  Accepting this allegation as true, the Court finds that
Plaintiff has set forth sufficient information to suggest that
Nurse Tees acted with deliberate indifference to Plaintiff's
serious medical need for his wheelchair.

    Additionally, in the section of the Complaint devoted to
Nurse Tees Plaintiff states, "told 2 nurse n Dr had cut meds no
report only 6 months to suit (nurses Lori Rosf, Eilean
Medevitt)[.]" Id.  Although the meaning of this section is

difficult to decipher by itself, the Court gleans from the rest of Plaintiff's Complaint that he means to allege two other facts with respect to Nurse Tees.

First, the Court finds that Plaintiff means to allege that Nurse Tees failed to write a report documenting Plaintiff's fall.  In reaching this conclusion, the Court also considers the section of the Complaint devoted to Dr. Wynn wherein Plaintiff describes the incident as, a "fall outside cell block 4 <u>that Toni Tees did not report</u>[.]" <u>Id.</u> at 7 (emphasis added).  This allegation further supports Plaintiff's claim that Nurse Tees acted with deliberate indifference.

Next, the court construes Plaintiff's comment regarding his "meds" as an allegation that Nurse Tees discontinued Plaintiff's medication.  This interpretation is supported by Plaintiff's allegation that both Nurse Rosf and Nurse Medevitt stopped issuing Plaintiff's medication "after talking to Toni Tees[.]" <u>Id.</u> at 10.

However, Plaintiff does not provide enough information to set forth a cause of action with respect to Nurse Tees' alleged discontinuation of his medication.  To begin with, Plaintiff does not indicate the purpose of the medication.  Therefore, he has not established that the medication was related to any serious medical need.  Likewise, Plaintiff does not allege facts to suggest that Nurse Tees acted with deliberate indifference by

discontinuing this medication.  Thus, Plaintiff's bare assertion
that Nurse Tees discontinued Plaintiff's medication, and ordered
other nurses to do the same, is insufficient to set forth a
cognizable claim.

For the reasons set forth above, Plaintiff's claims against
Nurse Tees alleging that she intentionally deprived him of his
wheelchair and intentionally denied him medical care after his
fall, shall be allowed to proceed at this time.

F. Claim against Nurse Joy Mitchel

Plaintiff states that Defendant Nurse Joy Mitchel "dumped
my pills in water 2 minutes later gave to me." (SAC 9, ECF No.
3).  Additionally, he states, "I moved chair to get dressing on
hip changed like always she threw hissy fit moved chair back
said she was in charge did not change dressing[.]" Id.  Neither
of these allegations is sufficient to assert a cause of action
against Nurse Mitchel.

With respect to the allegation that Nurse Mitchel dumped
Plaintiff's pills in water, Plaintiff does not provide enough
information to set forth a claim. It is unclear what purpose the
pills serve, therefore, Plaintiff has not established that they
are related to a serious medical need.  Further, Plaintiff
concedes that Nurse Mitchel did, in fact, give the pills to

Plaintiff.  Therefore, the scant information he provides does not establish deliberate indifference.[5]

With respect to Plaintiff's claim that Nurse Mitchel did not change his hip dressing because she was upset that he moved his chair, Plaintiff has not set forth facts alleging a serious medical need related to the hip dressing.  It is not evident from the SAC whether the injury on Plaintiff's hip is related to his serious medical need; and Plaintiff fails to describe the extent of the injury which required dressing.  Further, the minimal facts alleged do not establish that Nurse Mitchel acted with deliberate indifference by refusing to change the dressing at that time.

Accordingly, the claims against Nurse Mitchel will be dismissed.

G. Claims against Nurses Lori Rosf and Eilean Medevitt

Plaintiff alleges that both Nurses Rosf and Medevitt stopped providing him with medication after talking to Nurse Tees.  Plaintiff states that he has a witness, Joe Arrigo, who can support this allegation. (SAC 10, ECF No. 3).  However, as discussed above, Plaintiff does not indicate the purpose of the

---

[5] While the alleged harsh treatment by medical staff is troubling to the Court, it does not rise to the level of a constitutional violation. See Estelle, 429 U.S. at 106 (holding that mere negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation).

withheld medication; therefore, he does not establish that it was related to a serious medical need.  Additionally, he has not alleged facts to suggest that the nurses acted with deliberate indifference to this need by discontinuing the medication.  The claims against Nurses Rosf and Medevitt will be dismissed.

     H. <u>Claim Against C.O. Schank</u>

It is evident from the last page of Plaintiff's Second Amended Complaint ("SAC") that he wishes to add C.O. Schank as a defendant and assert a cause of action against him for negligence. (SAC, ECF No. 3 at 38).  However, Plaintiff does not allege any facts with respect to this defendant, aside from briefly mentioning him in the allegations relating to Nurse Tees.  Furthermore, a claim for negligence properly sounds in a state law and is not actionable under § 1983. <u>See</u> <u>Caldwell v. Beard</u>, 324 F. App'x 186, 188 (3d Cir. 2009).  Accordingly, any claims against C.O. Schank will be dismissed.

     I. <u>Claims of Excessive Force</u>

In the section of his Complaint devoted to Nurse Ciekierski, Plaintiff briefly mentions that he "ended up getting beat (handcuffed + shackled)" while in the hospital for a blood sugar check. (SAC 7, ECF No. 3).  Also, an unmarked attachment to the SAC describes an alleged assault and allegations suggesting excessive force. (SAC 22-23, ECF No. 3).  However, to the extent Plaintiff meant to assert a cause of action for

excessive force, the Court finds that Plaintiff has failed to set forth a cognizable claim.

As a pretrial detainee, Plaintiff's excessive force claim would generally be analyzed under the Fourteenth Amendment Due Process Clause. See Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). "The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Giles v. Kearney, 571 F.3d 318, 326–27 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)) (internal quotations omitted). In conducting this inquiry, courts consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. See id. (citing Whitley, 475 U.S. at 319).

In this case, Plaintiff has not pled enough facts to satisfy Iqbal's requirements. He generally alleges that he was "beat" when he went to the hospital to have his blood sugar checked. However, he provides no details, nor does he identify

the person(s) who allegedly participated in the assault.  As

such, to the extent Plaintiff meant to assert a claim for

excessive force, this Court will dismiss said claim without

prejudice.

IV.  <u>SUPPLEMENTAL FILINGS</u>

The Court notes that, since the filing of his Second

Amended Complaint, Plaintiff has submitted multiple letters to

the Court which provide supplemental information regarding the

conditions of his confinement, the retaliatory actions of prison

officials, and his medical condition. (ECF Nos. 5, 6, 7, 9, 10,

and 12).  The Court has carefully reviewed each submission.

Plaintiff's letters do not allege specific causes of

action.  Rather, they read more like a diary of Plaintiff's life

in prison — documenting daily occurrences and Plaintiff's

grievances.  Moreover, nowhere in Plaintiff's letters does he

expressly state that he wishes to add claims or defendants to

his Second Amended Complaint.  As evidenced by the fact that he

has filed two amended complaints in this case, alone, Plaintiff

was aware of how to go about filing an amendment if he wished to

do so.  Accordingly, the Court will not consider the facts

alleged in the letters for purposes of screening Plaintiff's

Second Amended Complaint pursuant to 28 U.S.C. § 1915A.

As noted earlier, this Court grants Plaintiff leave to

amend his SAC to cure the deficiencies noted herein.  Thus, in

the event Plaintiff wishes to add causes of action for retaliation, harassment, excessive force, prison conditions, or any of the other complaints he reports in his letters to the Court, he may do so in the form of a motion to amend.

The Court takes this opportunity to again remind Plaintiff that, when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West, 712 F.3d at 171 (collecting cases).

> [T]o ensure that the pleadings give notice of all the issues that are in the controversy so they can be handled and comprehended expeditiously, the safer practice is to introduce an amended pleading that is complete in itself, rather than one that refers to the prior pleading or seeks to incorporate a portion of it. . . . Even if the pleading is lengthy and involved, a self-contained amended pleading will assist the parties and the court in dealing with the issues better than one that is replete with references to another pleading.

6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008).

Accordingly, should he choose to amend, Plaintiff is encouraged to submit an all-inclusive Complaint that is complete in itself.

### V.   MOTION FOR PRO BONO COUNSEL

Plaintiff has filed a motion seeking the appointment of pro bono counsel. (ECF No. 13).  In it he states that he cannot

afford counsel and he asserts that he lacks the ability to present an effective case.

Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court sua sponte. See Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993), cert. denied, 510 U.S. 1196, 114 S.Ct. 1306, 127 L.Ed.2d 657 (1994). A plaintiff has no right to counsel in a civil case. See id. at 153–54; Parham v. Johnson, 126 F.3d 454, 456–57 (3d Cir. 1997).

In evaluating a motion to appoint counsel, the court must first examine the merits of Plaintiff's claim to determine if it has "some arguable merit in fact and law." Parham, 126 F.3d at 457. If the court is satisfied that the claim satisfies the test in Parham, and is "factually and legally meritorious," see id., then the court should consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his or her own behalf. See Tabron, 6 F.3d at 155–56, 157 n. 5) (providing a

non-exhaustive list of factors to serve as a guide post for district courts).

However, courts must also be mindful of other factors, such as the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time. See Tabron, 6 F.3d at 157–58.

Here, the defendants have not yet been served with the complaint.  Further, "whether or not Plaintiff's claims have merit, the factual and legal issues 'have not been tested or developed by the general course of litigation, making [a number of factors] of Parham's test particularly difficult to evaluate.'" See Johnson v. Camden County Prosecutors' Office, No. 11-3588, 2012 WL 273887 at *7 (D.N.J. Jan. 31, 2012) (quoting Chatterjee v. Philadelphia Federation of Teachers, No. 99-4122, 2000 WL 1022979 at *1 (E.D. Pa. July 18, 2000) (stating that unlike Parham, which concerned a directed verdict ruling, and Tabron, which involved summary judgment adjudication, plaintiff's claims asserted in complaint and motions "have barely been articulated" and have distinctive procedural posture)).

With regard to the Tabron/Parham factors, Plaintiff in this case has not demonstrated, at this stage of proceedings, the complexity of legal issues, the degree to which factual investigation will be necessary, or that he will be in need of

expert witnesses. See Johnson, No. 11-3588, 2012 WL 273887 at
*7.  The Court notes that Plaintiff states that he cannot afford
counsel and that he lacks the ability to present his case.
However, Plaintiff has managed to file two amended complaints
against numerous defendants, he has submitted several letters,
and he has filed the instant motion for appointment of counsel
without the assistance of counsel.  Thus, the Court finds that
appointment of pro bono counsel is inappropriate at this time.

    The Court recognizes that, as this case develops, Plaintiff
may be able to better demonstrate his need for counsel.
Accordingly, the Court will consider a renewed motion for
appointment of counsel.  At this point in the litigation,
however, the Plaintiff's motion for appointment of counsel will
be denied, without prejudice.

## VI.   CONCLUSION

    For the foregoing reasons, Plaintiff's claims against
Warden Lombardo, Dr. Santillio, Dr. Wynn, Head Nurse Kristy
Ciekiersky, Head Nurse Douglas Wyth, Nurse Joy Mitchel, Nurse
Lori Rosf, Nurse Eilean Medevitt, and C.O. Schank will be
dismissed for failure to state a claim at this time, pursuant to
28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However,
Plaintiff's claims asserting that Nurse Toni Tees intentionally
deprived him of his wheelchair, failed to lock the wheels, and

intentionally denied him medical care after his fall, shall be allowed to proceed at this time.

An appropriate Order follows.

__s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: June 8, 2015
At Camden, New Jersey